**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**SAMMIE MCCASTLE**                                                                            **PLAINTIFF**

**V.**                                                    **4:08CV04158-WRW**

**FIRST CAPITAL MANAGEMENT GROUP**                                       **DEFENDANT**

## ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 42).  Plaintiff has

responded,[1] and Defendant has replied.[2]  Based on the findings of fact and conclusions of law

below, the motion is GRANTED.

## I.     BACKGROUND

Plaintiff failed to file his own statement of material facts not in dispute, in response to

Defendant's statement of material facts not in dispute.  Under Local Rule 56.1, typically, I would

accept Defendant's statement of material facts admitted.[3]  However, I will adopt Plaintiff's

position regarding the facts, because the result is the same -- Defendant is entitled to summary

judgment. Notably, Plaintiff's own rendition of the facts is replete with contradictions, so I'll

attempt to set out Plaintiff's best-case factual scenario.

---

[1]Doc. No. 47.

[2]Doc. No. 48.

[3]Local Rule 56.1 reads:
(b) If the non-moving party opposes the motion [for summary judgment], it shall file,
in addition to any response and brief, a separate, short and concise statement of the
material facts as to which it contends a genuine issue exists to be tried.
(c) All material facts set forth in the statement filed by the moving party pursuant to
paragraph (a) shall be deemed admitted unless controverted by the statement filed
by the non-moving party under paragraph (b).

From July 18, 2007 through November 5, 2008, when he was terminated, Plaintiff worked as a maintenance employee at residential facilities managed by Defendant

Plaintiff asserts that his supervisor, Ms. Cynthia Brown, inappropriately touched him on three separate occasions between July 7, 2010,[4] and August 20, 2008.[5]  According to Plaintiff, in late July, 2008, he placed a letter on John Shiver's[6] assistant's desk that advised Mr. Shiver that Ms. Brown had touched him on his shoulder, arm, and buttocks.  In the letter, Plaintiff asked Mr. Shiver to resolve the issue.

About a month later, Plaintiff asked Mr. Shiver's assistant, Ms. Sheryl Blackstone, about the letter, and Ms. Blackstone informed Plaintiff that she was not aware of any letter, and that Mr. Shiver had not seen the letter.  After Ms. Blackstone suggested that Plaintiff resubmit the letter, Plaintiff "redated the original letter" to August 20, 2008, and "left a copy on Ms. Blackstone's desk."[7]  Plaintiff contends that Ms. Brown stopped the alleged inappropriate touching in August, after the second letter was delivered.

Over two months later, on November 4, 2008, Plaintiff and Ms. Brown got into an altercation.  Plaintiff's affidavit reads:

> While performing maintenance tasks [the morning of November 4, 2008], I received a cell phone call from my supervisor, Ms. Cynthia Brown, but I was unable to answer the call immediately.  Within five minutes of the call, I checked my voice messages and listened to a message from Ms. Brown in which she angrily demanded to know where I was.

---

[4]In his Complaint and in the EEOC Charge of Discrimination, Plaintiff asserts that the first act of sexual harassment was on July 18, 2008.  His deposition testimony mentions both July 7 and July 18.

[5]Doc. No. 2.

[6]Mr. Shiver is the President of Defendant First Capital.

[7]Doc. No. 47-2.

> I called Ms. Brown immediately after hearing her voice message, and she told me that if I enjoyed my job, I would answer the phone when she called.
>
> I tried to explain to Ms. Brown what I had been doing when she called, but she continued to suggest that I had been ignoring her. I eventually became upset and hung up the phone after saying "forget you."[8]

After hanging up, Plaintiff stopped by supervisor Scott Grummer's office and reported what had just occurred. Plaintiff and Mr. Grummer ended their conversation when Ms. Brown entered the area. Eventually, Plaintiff approached Ms. Brown about the phone call, and she accused him of removing a social security check from a former resident's mailbox. After the accusation, the conversation "grew more heated," and Mr. Grummer intervened and asked them to calm down.[9] Eventually, Mr. Grummer asked Plaintiff to take the rest of the day off. Plaintiff went directly to the EEOC to file a Charge of Discrimination.[10] According to Plaintiff, he also left a message on    Mr. Shiver's voice mail mentioning the altercation and that he'd been to the EEOC office.

On November 5, 2008, Plaintiff left another voice mail for Mr. Shiver and detailed his complaint that Ms. Brown was retaliating against him for refusing her advance and reporting her inappropriate conduct. On November 5, 2008, Mr. Grummer and Mr. Shiver discussed the November 4, 2008, altercation between Plaintiff and Ms. Brown, and decided to terminate Plaintiff's employment because "(1) he committed a serious violation of First Capital policies and procedures by entering a former resident's mailbox without authorization and taking custody of a social security check and (2) his reaction when asked about the mailbox incident was

---

[8]*Id.*

[9]*Id.*

[10]Doc. No. 42-9.  However, the EEOC charge is dated November 5, 2008.

inappropriate."[11] Plaintiff says he did not become aware of the termination decision until November 6.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[12] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[13]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[14] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[15] I must view the facts in the light most favorable to the party opposing the motion.[16] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is

---

[11]Doc. No. 44.

[12]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[14]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[15]*Id.* at 728.

[16]*Id.* at 727-28.

then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[17]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[18]

## III. DISCUSSION

### A. Amended Complaint

Plaintiff filed his original complaint on November 17, 2008, alleging sexual harassment and retaliation.[19] On January 20, 2009, Plaintiff filed an Amended Complaint that alleged only a claim for race discrimination.[20]

It is well-settled law that the an amended complaint supersedes an original complaint, rendering the original complaint "without legal effect."[21] However, *pro se* complaints, typically, should be construed liberally.[22] Although Plaintiff is a seasoned *pro se* plaintiff -- he has filed eleven Title VII cases in the Eastern District of Arkansas -- and should, by now, be well aware of the Federal Rules of Civil Procedure, I'll give him the benefit of the doubt and consider all three of his claims -- race discrimination, sexual harassment, and retaliation.

---

[17]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[18]*Anderson*, 477 U.S. at 248.

[19]Doc. No. 2.

[20]Doc. No. 26.

[21]*In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005).

[22]See *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### B.    Race Discrimination

Although Plaintiff's Amended Complaint asserts race discrimination claims,[23] neither of his EEOC charges giving rise to this case mention race discrimination.

A Title VII Plaintiff must exhaust administrative remedies before bringing suit in federal court.[24]  A plaintiff may file a civil action only after the EEOC issues a right-to-sue letter following the investigation of a charge.[25]  When the EEOC issues a right-to-sue letter, the scope of the civil action is limited to grievances in the charge.[26]  Permitting claims that are outside of the EEOC charge would undermine the EEOC's investigatory and conciliatory role, and deprive the charged party of notice.[27]

Because Plaintiff failed to present the race discrimination charges to the EEOC before filing suit in federal court, the claims must be dismissed.

### C.    Hostile Work Environment

Plaintiff's Complaint and Response to Defendant's Motion for Summary Judgment appear to assert claims for hostile work environment sexual discrimination.  To establish this claim, Plaintiff must prove that (1) he belonged to a protected class; (2) he was being sexually harassed; (3) the conduct was based on his gender; (4) the conduct was unwelcome; and (5) the harassment affected a term, condition, or privilege of his employment.[28]  "Conduct must be

---

[23]Doc. No. 26.

[24]42 U.S.C. § 2000(e)-5(f)(1).

[25]*Id.*

[26]*Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998).

[27]*Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994).

[28]See *Ottman v. City of Independence*, 341 F.3d 751, 759-760 (2003) (citing *Moring v. Ark. Dep't. Of Corr.*, 243 F.3d 452, 455 (8th Cir. 2001)).

extreme to amount to a change in the terms and conditions of employment."[29] "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[30] Not all conduct is abusive. In determining whether conduct is abusive, relevant factors are the frequency of the conduct; the severity of the conduct; whether the conduct is humiliating or physically threatening, versus an "offensive utterance"; and if the conduct unreasonably interferes with an employee's work performance."[31] Only conduct that a reasonable person in the plaintiff's position would find severely hostile or abusive is actionable.[32]

Plaintiff asserts that on three different occasions his supervisor, Ms. Brown, touched him on his thigh, buttocks, and shoulders (it appears that one time she touched his thigh; one time she touched his buttocks, and one time she touched his shoulders), despite Plaintiff asking Ms. Brown not to touch him.[33] However, Plaintiff concedes that the alleged unwanted touching ceased after he delivered a letter to Ms. Brown's supervisor, Mr. Shiver. Plaintiff also concedes that when he asked Ms. Brown to stop touching him, she stopped.[34] Furthermore, the three incidents of touching -- on the arm, shoulder, buttocks -- as described by Plaintiff, are hardly something "a reasonable person in the plaintiff's position would find severely hostile or abusive."

---

[29]*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[30]See *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

[31]*Ottman*, 341 F.3d at 760 (citing *Harris v. Forklift Sys., Inc*. 510 U.S. 17, 23 (1993)).

[32]*Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (referencing *Harris v. Forklift Sys., Inc*., 510 U.S. 17 (1993)).

[33]Doc. No. 47.

[34]Doc. No. 42-9.

**D.**     *Quid Pro Quo* **Sexual Harassment**

If Plaintiff is alleging *quid pro quo* sexual harassment (which is what he asserts in his response to Defendant's Motion for Summary Judgment), he has failed to meet his burden.  To establish a *primae facie* case of *quid pro quo* sexual harassment, Plaintiff must show that:

> (1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; and (4) [his] submission to the unwelcome advances was an express or implied condition for receiving job benefits or [his] refusal to submit resulted in a tangible job detriment.[35]

Plaintiff has failed to provide any evidence that his rebuke of Ms. Brown's alleged touching in July and August resulted in his termination.  Furthermore, Ms. Brown did not make the termination decision, nor does Plaintiff claim she influenced the decision maker. Finally, Plaintiff has provided no evidence that Mr. Shiver terminated Plaintiff either because he rejected Ms. Brown's advances or because Plaintiff reported the inappropriate touching.

**E.     Retaliation**

Plaintiff asserts that his November 5, 2008 termination was in retaliation for going to the EEOC after the altercation on November 4, 2008 (again, the Charge of Discrimination was filed on November 5, 2008).[36]

To prevail on a retaliation claim brought under Title VII, "an employee must show that (1) [he] filed a charge of discrimination; (2) the employer subsequently took adverse employment action against [him]; and (3) the adverse action was causally linked to the filing of the charge of discrimination."[37]  Once Plaintiff makes this *prima facie* showing, the "burden shifts to the

---

[35]*Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 473 (8th Cir. 1995).

[36]Doc. No. 2.

[37]*Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997).

employer to articulate a legitimate, nondiscriminatory reason for its actions."[38]  If Defendant make this showing, Plaintiff must show that the proffered reason was a pretext for illegal retaliation.

Assuming Plaintiff met his *prima facie* burden, Defendant provided a "legitimate, nondiscriminatory reason for its actions," and Plaintiff has failed to show that the proffered reason was a pretext.  Defendant presented uncontradicted evidence that Plaintiff was reprimanded several times for work policy violations before he was terminated, and that on July 15, he was informed that any more violations could result in termination.[39]  Additionally, Defendant contends that on November 5, 2008, Mr. Grummer and Mr. Shiver discussed the November 4 altercation between Plaintiff and Ms. Brown, and decided to terminate Plaintiff because "(1) he committed a serious violation of First Capital policies and procedures by entering a former resident's mailbox without authorization and taking custody of a social security check and (2) his reaction when asked about the mailbox incident was inappropriate."[40]

Plaintiff's only response to Defendant's position is that Mr. Shiver failed to investigate the alleged touching.[41]  But this position contradicts Plaintiff's previous position that after he gave Defendant the letter, the alleged touching stopped.  Additionally, Plaintiff conceded that the three touching incidents occurred in July and August and were no longer an issue in November.  Finally, it doesn't appear from that record that Mr. Shiver was even aware of the EEOC filing at the time he made the termination decision.

---

[38]*Id.*

[39]Doc. No. 44. Plaintiff was "counseled several times for inappropriate contact with residents" and was reprimanded on February 14, 2008; June 2, 2008; and July 15, 2008.

[40]*Id.*

[41]Doc. No. 47.

**CONCLUSION**

Based on the findings of fact and conclusions of law above, no questions of material fact remain in dispute, and Defendant's Motion for Summary Judgment (Doc. No. 42) is GRANTED.

I believe Plaintiffs lawsuit is "frivolous, unreasonable, or groundless."[42]  Therefore, Plaintiff is directed to pay Defendant $500 for attorneys' fees.

IT IS SO ORDERED this 4th day of March, 2010.

/s/ Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[42]*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).